The People *ex. rel.* Hughes *vs.* May.

No person who has not been previously admitted as an attorney at law, is eligible to the office of prosecuting attorney. Such was the popular understanding before the revised constitution, and the uniform practice of the government, accorded with such understanding, and such practice and understanding should be held of equal force with judicial and legislative construction.

The revised constitution, although it changed the mode of selecting the person to fill this office, made no change as to his eligibility.

Information in the nature of a quo warranto.

At the general election in November, 1852, there was to be chosen a prosecuting attorney for the county of Calhoun, under section 3, art. 10, of the new Constitution; the whole number of votes given for the office of prosecuting attorney was three thousand nine hundred and fourteen, of which C. S. May, the defendant, received two thousand and twenty-seven, and D. D. Hughes, the relator, one thousand eight hundred and eighty-seven. No votes were given for any other person. The county board of canvassers awarded the certificate of election to the defendant, who took the constitutional oath, entered upon said office, and assumed to exercise its duties. The defendant, at the time of the election, was a citizen of the United States, and of the State of Michigan, resided at the town of Battle Creek, Calhoun county, and was of the age of 21 years and upwards, but had not been licensed and admitted to practice as an attorney and counselor at law, in any of the courts of this State.

The only point made by the People in support of the information was whether a license to practice as an attorney and counselor at law in the courts of this State, is necessary to make a citizen eligible to the office of prosecuting attorney.

*Crary & Hughes*, for The People.

At the time of the defendant's election, the statutes of this State provided that no person should practice as an attorney and counsellor at law unless approved by the court for good moral character, &c., and duly admitted. (*R. S.* 1846, *ch.* 95, 423; *S. L.* 1849, 233.) To practice as an attorney, there must be a grant from the court, and an oath of office taken, which is necessary, as the attorney is by law an officer of the court. Being such officer of the court may appoint him

The People *ex rel.* Hughes *vs.* May.

to discharge specific duties—to prosecute or defend in special cases—but he can not be until he has become an officer of the court. The word attorney is sometimes used to convey the idea of an unprofessional agent appointed to act as the representative of another, but more frequently as applicable to an attorney at law retained to prosecute and defend for his client. In the latter sense he is always considered as an officer of a court. (2 *Pet. Ab.* 500.)

Webster defines an attorney to be either public or private. The former is an attorney at law, an officer of a court of law, legally qualified to prosecute and defend actions, whom any client can select to prosecute for or defend him in any court; but the attorney private cannot be so selected, unless he also be the attorney public, for the reason that he is not an officer of the court, and is not amenable to its authority.

Sec. 3 of art. 10 of the constitution of 1850, says there shall be a prosecuting attorney in each organized county, chosen by the electors once in two years. There was a similar provision in the constitution of 1836, but the appointment was made by the Governor. But, however created, he is the *legal representative* of the people in the court. (4 *Burr.* 2570; 1 *Tom. L. Dic.* 128.)

In many of the States, this representative of the people is selected by the courts. In fact, the manner of creating the office makes no difference—but the question before the court is, can such an officer be selected from among those who are not attorneys—officers of the court. It cannot be done, because no attorney can appear as an officer of the court who has not been admitted to practice. Appointment by the Governor, or election by the people, confers no authority to appear in court. The person appointed or elected is called not a prosecutor, but a prosecuting attorney. The very words presuppose the individual to be an attorney, and while in such capacity to be elected or appointed a prosecuting attorney, or an attorney to prosecute. The appointment or elec-

tion does not confer on the individual the privilege of being considered an attorney if he was not one before—but having the attorney's privilege in court he can by the appointment or election appear in behalf of the people to prosecute, and have his designation, prosecuting attorney.

In creating this office, it was not the intent of the people to judge of the qualifications of men to be attorneys at law, or to make attorneys at law, but to designate some attorney to be a prosecutor in the courts in their behalf. Otherwise they would have said an attorney shall be elected, and then perhaps would have resulted all that is now claimed by the defence in this case.

The change that was made by the constitution of 1850, in the manner of creating a prosecuting attorney, does not affect any principle in relation to the office. If the Governor was obliged to appoint the prosecuting attorney from among the list of the attorneys public of the State, the people must elect from the same list. In many of the States the court appoint the prosecuting attorney — but this does not give to the court the power to create attorneys at law. Such appointment conferred on one, not an attorney at law, would not carry with it the privilege of appearing as an attorney within the bar of the court. The law in relation to attorneys has not been changed by giving the election of a prosecuting attorney to the people. In that election the people are as much bound to select their prosecutor from among attorneys at law as would be the Governor or the court. The idea that the people can do as they please, when they have bound themselves to be subject both to the fundamental and the statute law, is preposterous. They are collectively sovereigns to create the law, but individually subject to it when made.

The constitution uses words in their ordinary acceptation. In using common law terms, it recognizes the common law. The common law recognizes no man as an attorney in a court of law, who has not been duly and legally made an officer of

such court. The constitution then, in using the word attorney in connection with the courts, employed a word which the books of the law make an officer of the court. In using the words "prosecuting attorney," it employs words which the books of the law define to be an attorney to prosecute in the courts of the law—but no attorney can prosecute in courts of·law unless he be an attorney at law.

*Giddings & May,* and *G. V. N. Lothrop,* for defendant.

The office of prosecuting attorney is a constitutional office. "In each organized county there shall be a sheriff, * * * and a prosecuting attorney, chosen by the electors thereof once in two years, and as often as vacancies shall happen, whose *duties and powers* shall be described by law." (*Con. art.* 10, *sec.* 3.)

No qualification whatever is named or authorized. Any citizen of competent age to exercise civil and political functions is eligible. The whole spirit and tendency of our constitution is to open all civil and political rights and privileges to all citizens. *To be a citizen* is to be qualified for the enjoyment of any right or privilege under our State Government. There is no exception to this, unless a fixed time of residence in one or two instances be deemed such.

At any rate *this is the rule,* and no presumption is to be indulged against it. This fundamental right of each citizen *as a citizen* can be impaired only by express provisions of law. No such limitation can be found either in the constitution or statute.

2. It is not in the power of the Judiciary or Legislature to establish arbitrary exclusions from office where the constitution has not. (*Barker* vs. *People,* 3 *Cow.* 703; *Page* vs. *Hardin,* 8 *B. Mon.* 660.)

3. There is no statute which disqualifies the defendant; none requiring the prosecuting attorney to be an attorney at law. A prosecuting attorney is not a general officer of court

like an attorney at law — is not authorized to conduct all legal transactions, nor required to submit to an examination, and does not take the oath of an attorney at law. A prosecuting attorney needs no license but an election. He is a special agent of the people, and his election is his power of attorney. He is a *public officer* constitutionally chosen, and not a person licensed to pursue a particular professional calling.

The statute (*R. S.* 423, *sec.* 26,) does not raise a qualification for an office, but relates solely to a license to *practice generally* in the profession of law. A suitor could always appear in a court of common law and *practice* in his own cause. Or he could authorize by special power of attorney any person to appear in court in a particular case. Yet in these cases the person does or may perform duties usually performed by a licensed lawyer. Still, no one would say that he practiced as an attorney or counselor.

The provisions of the statute touching prosecuting attorneys and the license of attorneys at law are in totally distinct chapters.

4. The position taken on behalf of the people impeaches the whole principle upon which the selection of public officers under our present constitution depends. This principle is the right of the people to judge of the whole *qualifications* of their officers from the highest to the lowest.

5. There is nothing in the name which fairly implies that the officer must be an " attorney at law." Attorney simply means one who stands in the place of another. Attorney at law has come to have a technical meaning: and it would be absurd to turn back and reason from this special and derived meaning. An *original* meaning often throws light on all its *derivatives*, but the opposite process is illogical. " Attorney General" does not necessarily imply that that officer must be an attorney at law? We all know that in England this officer's sole legal qualification was, that he had the letters

patent of the Crown. This puts him *in place of the Crown* in the courts for certain purposes. In this State, attorneys general and prosecuting attorneys correspond to the Crown officers in England; and as letters patent gave title in the one case, so in the other popular election gives title. These are the respective solemn instruments which give authority to the officer to stand in the place of the public in Court or out of Court.

It may not be out of place to mention here that the Chancellor is the highest judicial officer in Great Britain. Yet all lawyers know that for many years this office was almost always held by an ecclesiastic.

6. If a license to practice as an attorney and counsellor at law is a qualification of eligibility to the office of prosecuting attorney, it must necessarily be a *continuing qualification*, because the ground on which this is assumed as a qualification is, that unless the officer has his professional character, he cannot exercise certain official functions.

Now the power which makes an attorney at law can unmake him. The courts can degrade a man from the profession—"throw him over the bar." When the *lawyer* goes over, does the prosecuting attorney go over, too? Can a public office be made vacant in any such manner? Is any such *ouster* known to our law? Both the revised statutes and the constitution have pointed out the cases in which vacancies of offices may occur, or incumbents be removed, but we think nothing analogous can be found there. (*R. S.* ch. 15; *Con., art.* 11.)

By the Court, MARTIN, J.

Among the well settled rules of construction of statutes, are these: 1st, the natural import of the words of any legislative act, according to the common use of them when applied to the subject matter of the act, is to be taken as expressing the intention of the Legislature, unless the intention

so resulting from the ordinary import of the words be repugnant to sound acknowledged principles of public policy; (7 *Mass.* 523;) and 2d, if the subject of the statute relates to courts or legal proofs, the words of the Legislature are to be construed technically, unless from the statute itself it appears that the terms were used in a more popular sense. (4 *Pick.* 405; 24 *Ib.* 296.) These rules are equally applicable in the construction of a constitution—as a constitution is law, the people having been the legislators—as much as a statute is law, the Senators and Representatives being the legislators.

The *natural* import of words is that which their utterance promptly and uniformly suggests to the mind—that which common use has affixed to them; the *technical*, is that which is suggested by their use in reference to a science or profession—that which particular use has affixed to them; and when the natural and technical import unite upon a word, both these rules combine to control its construction, and indeed, it is difficult to understand how any other signification than that which they suggest can be affixed to it, unless upon the most positive declaration that a different one was designed.

Now the word *attorney*, when used in connection with the proceedings of courts, and the authority to conduct business in them, as well as when employed in a general sense with reference to the transaction of business usually and almost necessarily confided to members of the legal profession, has a fixed and universal signification on which the technical and popular sense unite. The legislator and the judge, the lawyer and the layman, understand it alike, as having reference to a class of persons who are by license constituted officers of courts of justice, and who are empowered to appear and prosecute and defend, and upon whom peculiar duties, responsibilities and liabilities are devolved by law in consequence. That the natural and technical import of the words or title *prosecuting attorney* are identical,

I shall not stop to argue at length; our common experience teaches us that they suggest to every person alike, the idea of an *attorney at law* set apart to conduct the public business whether of a civil or criminal nature—and perhaps primarily —that of a criminal character in the courts of law.

Before the adoption of our present constitution, I apprehend it was never supposed, nor would it for a moment have been contended, that any person who was not an attorney at law was eligible to the office of prosecuting attorney. Indeed, I am not aware that it was ever the subject of doubt, and this uniform understanding of the public, and the uniform practice of the government corresponding with such public understanding, is and should be held of equal force and obligation with judicial or legislative construction. By the constitution of 1835, art. 7, § 3, it was provided that there should be an attorney general for the State, and a prosecuting attorney for each of the respective counties, who should be appointed by the governor by and with the advice of the Senate, and whose powers and duties should be prescribed by law. No instance occurred, to my knowledge, in which, under that constitution, any person was ever appointed to either of these offices who was not an attorney at law, and it would have been held an abuse of his office had any Governor attempted any such thing. In addition to such popular, and it may be added, executive understanding, we have that of the Legislature also, as to the import of these words. By the Revised Statutes of 1846, chap. 14, §§ 53, 60, the duties of this officer are prescribed; and among other things he is required to appear and prosecute causes, whether civil or criminal, in which the State or county is a party, in all the courts of his county, and he is made the legal adviser of the county officers. By the same statute, chap. 95, §§ 26, 27, it is enacted that no person shall practice as an attorney, &c., unless licensed; and the same laws substantially existed at the time of the adoption of that constitution, and the re-

vision of 1846. Now statutes *pari materia*—those having relation to any particular class of persons or class of duties, are to be construed together, and these both relating to officers of courts, and to the persons who may prosecute and defend suits in them, and being enacted simultaneously must receive such a construction as will render each consistent with the other. The Legislature, then, could only have understood that the prosecuting attorney was to be selected from among those whom it authorized by chap. 95 to discharge the duties it in chap. 14 imposed upon him, and upon whom it imposed no disability inconsistent with the power to discharge such duty; and this still more plainly appears from the language of § 60, chap. 14, in which the Legislature distinctly avow the light in which the words prosecuting attorney were regarded, for it is enacted that "the Supreme Court, and each of the Circuit Courts, wherever there shall be no prosecuting attorney for the county, or" &c., may, by an order to be entered in the minutes of the Court, appoint *some other attorney at law* to perform for the time being the duties of the office. And again, by § 11 of chap. 15 of R. S., p. 82, it is provided "that whenever charges shall be made against any prosecuting attorney, as provided in section six of this chapter, the Governor shall direct the attorney general, or the prosecuting attorney of some county adjoining that in which the accused resides, or *some other attorney at law*, to conduct the inquiry into such charges." No words can more plainly indicate the understanding of the Legislature, that the prosecuting attorney was required to be an attorney at law, than these.

Have the people, by the new constitution, attached any different signification to these words, or taken this officer out from under the operation of chap. 95, § 26, of the Revised Statutes? We think not. The power to confer this office was always primarily in them. By the old constitution they delegated it to the Governor and Senate; by the new,

they have simply reclaimed it to be exercised by themselves, by election of the incumbent. By art. 10, § 3, it is provided that a *prosecuting attorney* shall be chosen by the electors. The language designating the officer is the same as the old constitution, which had received both a popular and legislative construction; and by a well settled canon of construction, it must continue to receive the same, unless the contrary intention expressly appears. Had the language been " *a person to discharge the duties heretofore executed by a prosecuting attorney*," there would be some ground upon which to base an argument that a change was designed ; but the use of identical words negatives any such idea. Can it be necessary, by a labored argument, to maintain the almost self-established proposition, that the framers of the new constitution used words and phrases which they adopted from the old, according to their universally received and established import?

But we are not without further legislative aid in solving this question. By sec. 13 of the schedule to the new constitution, it was made the duty of the Legislature, at their first session after its adoption, to adapt the existing laws to its provisions, as far as might be. In the discharge of that duty, the Legislature of 1851 did not repeal § 60 of chap. 14, and § 11 of chap. 15, of the Revised Statutes, and we may therefore presume they did not deem their provisions inconsistent with the constitution. By those of chap. 14, courts are now, as they were before, required to appoint *some other attorney at law* to discharge the duties of the office of prosecuting attorney for the time being, where the necessity for such appointment shall arise. Now it would naturally be supposed that this power of appointment, so far as eligibility of persons was involved, would be as broad as the power of election, and that if the Legislature supposed the one to have been enlarged, it would have enlarged the other also—or would at least have stricken out from the statute the word

"other." So also § 11 of chap. 15, and § 26 of chap. 95, remain untouched, and consequently unrepealed, and we know that they are constantly executed. Again, by the first and subsequent sections of chap. 95 of the Revised Statutes, provision was made for the *appointment* of a circuit court commissioner in each county of the State, and he was required to be, at the time of his appointment, an attorney and counselor at law. By § 16 of art. 6 of the new constitution, the Legislature was authorized to provide by law for the *election* of one or more persons in each organized county who may be vested with judicial powers, not exceeding those of a circuit judge at chambers.

The Legislature of 1851 discharged this duty by an amendment of the Revised Statutes, providing for the election of one circuit court commissioner, and retained the section prohibiting the election of any one but an attorney and counselor at law to the office. (*Sess. L.* 1851, *p.* 209.) Now if the power to elect a prosecuting attorney is construed to do away with all previously required qualifications, and open the office to general competition, why should not the power to elect "one or more persons" have the like effect in this latter case? The truth is, that if the Court may be regarded as imposing disabilities or annexing qualifications, by holding in this case that the disabilities existing and qualifications required before the adoption of the new constitution were retained by it, much more may the Legislature be obnoxious to the same charge, in the provision concerning circuit court commissioners. Yet no one will contend that the framers of the constitution could for a moment have lost sight of existing laws relative to the latter officer, or contemplated an abrogation of the qualifications then required by existing laws, and so necessary to the execution of his duties.

In both cases they considered and acted upon the office as they found it, and intended to do nothing more than to make it elective. When the nature and extent of the duties conferred

77

upon these officers is considered, and the numerous powers lodged with them are understood, it cannot be presumed that the framers of this instrument had any design to change the existing order of things, especially when the least reflection would have shown them that such change might easily result in throwing our whole judicial system into perfect chaos. Any other construction would result prejudicially to the interests of the public, and be repugnant to sound and acknowledged principles of public policy. If such will be the result, our plain duty is to give that construction to the constitution, where not positively precluded by its express language, which will avoid such disastrous consequences.

We concede, to the fullest extent, that it is not in the power of the judiciary, or even the Legislature, to establish arbitrary exclusions from office, or annex qualifications thereto, when the constitution has not established such exclusions nor annexed such qualifications. But it is begging the question to assume that the act of construing the constitution has this effect. Now the framers of a constitution are presumed to have a knowledge of existing laws, and of their construction and the mode of their administration, and to act in reference to that knowledge as much as legislators are, and in this light we construe both constitutional and statutory law. The question we are required to solve is, what was the intention of the people in reclaiming by the constitution the power which had been delegated, and if we find that it was before delegated to be exercised in a particular manner, or in view of any especial qualifications required to be possessed by the beneficiary, and especially if there had been a universal popular, as well as legislative construction, as old as the government, of the manner of, and the limitation to the exercise of such power, are we establishing arbitrary exclusions from this office, or annexing any qualifications thereto, by holding that the power was resumed to be exercised in the same manner it always had been, and subject to the same

The People *ex rel.* Hughes *vs.* May.

limitations and restrictions which had always attended it? To search for and ascertain the intention of the law makers is a very different thing from legislation, and if the argument, urged on behalf of this defendant is of any force now, it may always be successfully employed whenever courts are called upon to give construction to laws, and that power to, construe be thus virtually taken away.

But it is urged that if the license to practice as an attorney and counselor at law is a qualification of eligibility to the office of prosecuting attorney, it must necessarily be a continuing qualification, and it is said " the power which makes, an attorney at law can unmake him. The courts can degrade a man from the profession—throw him over the bar— and we are asked, when the *lawyer* goes over, does the prosecuting attorney go over too?" A fair answer to this question and proposition is, how has it been heretofore? The construction of the constitution to which we have arrived, can by no possibility change existing laws or established practice in this respect, while a contrary one might, and almost necessarily would have such an effect.

But it is not true that the courts make and unmake attorneys. It is the law which does this, and courts are in this, as in any other respect, the administrators of that law.

We have not been unmindful of the delicacy of this question, nor regardless of the rights of the people to exercise the electoral right untrammelled by any conditions or restrictions, except such as are self-imposed. But such conditions, and restrictions, when established, are to be enforced, as well as the right itself. That there were such self-imposed in the instance before us, we cannot doubt, and were it a balanced question, we should not hesitate to solve it in such manner as to protect the public interests, and especially to preserve the criminal jurisprudence of the State from possible utter prostration.

Douglass, J., did not concur.