THE PEOPLE ex rel. BAXTER et al. *v.* HALLETT.

JURISDICTION—*mandamus to district judge.* This court has jurisdiction of an application to compel a judge of a district court to recognize a district attorney.

DISTRICT ATTORNEY—*qualifications.* Whether one who was not a licensed attorney at the time of his election was eligible to the office of district attorney, the court was not agreed.

PRACTICE—MANDAMUS—*where the court is divided in opinion.* Upon application for mandamus, if the court is equally divided in opinion, the writ will be denied.

*Petition for mandamus.*

THE proceeding was against the chief justice, and BELFORD and WELLS, JJ., were not agreed upon the principal point, and therefore the writ was denied.

Mr. H. C. THATCHER and Messrs. MILLER & MARKHAM, for petitioners.

Mr. W. C. KINGSLEY and Mr. N. HARRISON, for respondent.

BELFORD, J.  This is an application for a peremptory writ of mandamus to issue against Moses Hallett, judge of the third judicial district, to compel him to recognize Marmaduke Green as the prosecuting attorney of that district.

It appears that at the election, held in September, 1870, Green was, by the votes of the qualified electors of the third district, elected prosecuting attorney.  He received his certificate, took the prescribed oath, filed a suitable bond, received his commission from the governor, and entered upon the discharge of his duties.  At the December term of the Pueblo district court the respondent, then presiding as judge, refused to recognize Green as such prosecuting attorney, because he was not, as the order of the court alleges, an attorney of said court, or authorized to appear therein.  It is admitted on both sides that, at the date of the election, Green was not a licensed attorney.  On behalf of the relators, it is claimed that the people having elected him to this office, he is entitled to discharge the duties and receive the emoluments of the same, and that the action of the court in refusing to recognize him is not only revolutionary in its character, but, if permitted to ripen into a precedent, would subvert the principles of our government and overthrow the rights of its citizens.  On the other hand, it is contended that the statutes of the territory prescribe who shall be attorneys, and make it an indispensable prerequisite to the practice of the law in our courts, that a license shall be obtained from the supreme court, and until it is obtained, no man, however great may be his abilities, is entitled to standing or recognition at the bar of the judiciary.  I fully conceive the vast importance of the principles involved, but shall not shrink from their discussion.  If permitted to have any choice as to the causes that should come before me, this is one of the last I would desire to entertain, but no

choice is left. This court is bound to a single duty, and that is, to decide the causes brought before it according to law, leaving the consequences to fall where they may.

It has been well said that, in order to maintain a system of government which will be able to secure to the citizen his rights, it is necessary to have persons appointed or chosen to administer the law. And, when persons are thus clothed with the power and have assumed the duties of a public officer, they have taken upon themselves the obligation to perform those duties, and if they neglect or refuse to do so, any one whose rights are thereby injuriously affected is entitled to demand relief. The remedy provided by our system of law, as well as that of England, is a process, issuing from the judicial branch of the government, which seeks to compel the officer to go forward and to do that which is enjoined upon him by the position he holds. This process is denominated a writ of mandamus, and when there is a right to execute an office, perform a service, or exercise a function, more especially if it be a matter of public concern or attended with profit, and a person having such right is wrongfully kept out of possession or dispossessed of such right, and has no other specific legal remedy, the court will interfere by mandamus upon reasons of justice and of public policy to preserve peace, order and good government. But, while the judiciary is thus clothed with this extraordinary power, it is never exercised, except to enforce a *legal right.* It cannot be invoked to place one in office or to secure him in the enjoyment of the same, if it is manifest that he has no title. If, at the date of the election, Green was an ineligible candidate, and legally disqualified from holding the office of prosecuting attorney, the people who elected him were bound to take notice of this ineligibility and disqualification, and no vote that they could cast and no commission that he could receive could remove or cure the infirmities or disabilities which attached to him. While the will of the people is sovereign, still it must be expressed in accordance with recognized public law, and when it exceeds the limits of this, it is the duty of courts to interfere and by judicial

checks afford the people time for reason and reflection. Before proceeding to an examination of our statutes on this subject, it will not be out of place to inquire what an attorney is. "An attorney at law," says Blackstone, "answers to the *procurator* or proctor of the civilians and canonists. And he is one who is put in the place, stead or turn of another, to manage his matters of law. These attorneys," he adds, "are now formed into a regular corps; they are admitted to the execution of their office by the superior courts of Westminster Hall and are in all points officers of the respective courts in which they are admitted, and as they have many privileges on account of their attendance there, so they are peculiarly subject to censure and animadversion of the judges. No man can practice as an attorney in any of those courts but such as have been *admitted and sworn* an attorney." So early as the statute 4 Henry IV, chapter 18, it was enacted that attorneys should be examined by the judges, and none admitted but such as were virtuous, learned and sworn to do their duty. And many subsequent statutes have laid them under further regulations. The statute in this territory is not much unlike those in England. Section 1 provides: No person shall be permitted to practice as an attorney or counselor at law, or to commence, conduct or defend any action, suit or plaint in which he is not a party concerned, in any court of record within this territory, either by using or subscribing his own name or the name of any other person, without having previously obtained a license for that purpose from some two of the justices of the supreme court, *which license shall constitute the person receiving the same an attorney and counselor at law*, and shall authorize him to appear in all courts of record within this territory and there to practice as an attorney and counselor at law, according to the laws and customs thereof; * * * and to demand and receive all such fees as are or hereafter may be established for any services which he shall or may render as an attorney and counselor at law in this territory. Section 2 provides that no person shall be entitled to receive a license until he shall have obtained

a certificate from the court of some county of his good moral character, and also a certificate from one or more respectable counselors at law, that he has been engaged in the study of the law for two successive years prior to the making of such application. Section 4 makes it the duty of the clerk of the supreme court to make and keep a roll or record, stating that the persons whose names are therein written have been regularly licensed and admitted to practice as attorneys at law within this territory. Section 5 provides : And no person, whose name is not subscribed to or written on said roll, with the day and year when the same was subscribed thereto or written thereon, shall be suffered or admitted to practice as an attorney or counselor at law within this territory.

From reading this statute it is evident that the intent of the legislature in passing it was to elevate the standard of the legal profession, by excluding from it those who had not made the science of the law a matter of study. To guard the interest of the community, and to preserve from violence and injustice the rights of individuals, the legislature emphatically declares that no person shall be permitted to practice as an attorney at law, or to commence, conduct or defend any action in which he is not a party concerned, without having previously obtained a license. He may commence and manage his own case, but if he declines to do this, he cannot employ another individual to attend it for him, unless that individual has qualified himself for the task by two years' study. This evidence is the license under the sign manual of two of the justices of the supreme court, and, in the language of the statute, "this license shall constitute the person receiving the same an attorney at law, and authorize him to appear in court." Without that license he cannot appear ; it is his passport to the bar. It is the charter that gives him a right to be heard ; it is the authority which empowers him to collect fees for services rendered, and if he does not have it, the court can rightfully and properly refuse to recognize him, although his talents may not be inferior to those of a Webster or a Choate.

Can it be said that the legislature intended to confine this statute to civil suits alone? Does all this legislative solicitude center upon dollars and cents, while the rights of life and liberty are turned adrift to be sported and trifled with by any one whom the people in their partisan madness and frenzy may elect and call prosecuting attorney? And, can it be said that this court ought to issue a writ of mandate to compel the judge below to violate this clearly-expressed public law? When the statute says, "that no person shall be permitted to commence, conduct or defend *any action* without a license as an attorney," do the words, "any action," simply mean any civil action, or do they apply to all kinds of actions entertained and heard in courts? Is there any less necessity for a knowledge of the law when a man is on trial for his life than there is when the contest is confined to property? Shall we impute to the legislature a shameful disregard of man's dearest and most vital interests, by holding that an act, designedly passed, to preserve the character and dignity of a profession that in all ages has been the bulwark of society, and into whose hands the most sacred trusts are and have been committed, fails to give protection when protection is most required? And this we will do, if this statute is so construed as to confine its provisions to attorneys merely employed in the trial of civil cases. It must be observed, also, that this act, defining the duties of the district attorney, devolves upon him the necessity of appearing in behalf of the territory and the several counties of his district in all indictments, *suits and proceedings*, where the territory or the people thereof, or any county of his said district may be a party. His duties, therefore, embrace something more than criminal business. It touches upon — nay, he must enter into the domain, where admission as to all others is only secured by a license. But it is contended that the act creating the office of district attorney does not require that such officer shall have been admitted and licensed as an attorney. True, it does not, but it is a well-settled principle that, in giving construction to any statute, the legislature must be understood

to have used terms and phrases in the sense in which those terms and phrases for long years prior had been understood and received in relation to a particular subject. Another well-established and fundamental rule of construction is, that all acts and provisions of the law, in *pari materia*, are to be taken and considered together. It follows, therefore, that, in construing the act under examination, we must look to the object and purpose of the legislature as gathered from the light of surrounding circumstances, and as illustrated and explained by the previous legislation in this and other States relating to the same subject.

Another rule of construction is, that where the same or similar words are used in a statute, which are found in a previous statute, relating to the same subject-matter, the latter act must receive the same construction as the former. In many of the States this representative of the people is selected by the courts. The manner of creating the office can make no difference; the question is, can such an officer be selected from among those who are not attorneys — officers of the court? It cannot be done, because no attorney can appear as an officer of the court who has not been admitted to practice. Appointment by the governor or election by the people confers no authority to appear in court. The person elected is not called prosecutor but prosecuting or district attorney. The very words pre-suppose the individual to be an attorney, and, while in such capacity, to be elected a district attorney or an attorney to prosecute the pleas of the territory. The election does not confer on the individual the privilege of being considered an attorney if he was not one before, but, having the attorney's privilege in court, he can, by appointment or election, appear in behalf of the people to prosecute and have his designation "district attorney" or "prosecuting attorney." The experience of every member of the bar will teach him that this is the universal and accepted construction given to acts of the character now under consideration. But, to make clearer this principle, let me illustrate it by an example: A B is elected prosecuting attorney, qualifies and enters upon the

discharge of his duties. During a term of court he is disabled and becomes incapable of attending to his duties. To prevent a failure of justice, the court must appoint a prosecutor ; can it be contended that the judge could appoint to such office one who had never been admitted to practice law, or, if he should assume to do so, would it not be an abuse of his powers ? But, it is said, that the statute fixes no grade of ability for this office. True, it does not, and, generally speaking, eminent qualifications have nowhere been held to be indispensable to the occupation of office ; but the statute has, at least, enjoined one thing, and that is, whether the individual has one or ten or twenty talents, he shall not be permitted to display them, as an attorney at law, in the courts of justice, until he has spent two years in burnishing them up, and has a certificate to that effect. Fortunately we are not without authority on this subject.

In the case of *The People ex rel. Hughes* v. *May*, 3 Mich. 598, it is held by the court that no person who has not been previously admitted as an attorney at law is eligible to the office of prosecuting attorney. The Michigan statute is like our own. The people there elected' May district attorney. Prior to the election, he had not been admitted as a member of the bar, and had not received a license, and the supreme court held that he was clearly ineligible, and sustained a judgment of *ouster* on that ground. MARTIN, J., in delivering the opinion of the court, says: " Among the well-settled rules of construction of statutes are these : ,1st. The natural import of the words of any legislative act, according to the common use of them when applied to the subject-matter of the act, is to be taken as expressing the intention of the legislature, unless the intention so resulting from the ordinary import of the words be repugnant to sound acknowledged principles of public policy.

" The *natural* import of words is that which their utterance promptly and uniformly suggests to the mind, that which common use has affixed to them ; the *technical* is that which is suggested by their use in reference to a science or profes-

sion, that which particular use has fixed to them, and when the natural and technical import unite upon a word both their rules combine to control its construction, and, indeed, it is difficult to understand how any other signification, than that which they suggest, can be affixed to it, unless upon the most positive declaration, that a different one was designed. Now, the word "attorney," when used in connection with the proceedings of courts, and the authority to conduct business in them, as well as when employed in a general sense with reference to the transaction of business, usually and almost necessarily confided to members of the legal profession, has a fixed and universal signification on which the technical and popular sense unite. The legislature and the judge, the lawyer and the layman, understand it alike as having reference to a class of persons who are, by license, constituted officers of courts of justice, and who are empowered to appear and prosecute, and defend, and upon whom peculiar duties, responsibilities and liabilities are devolved by law in consequence. That the natural and technical import of the words or title "prosecuting attorney," are identical, I shall not stop to argue at length, and common experience teaches us that they suggest to every person alike the idea of an *attorney at law*, set apart to conduct the public business, whether of a civil or criminal nature, and perhaps primarily, that of a criminal character."

In the case of *The Commonwealth* v. *Adams*, 3 Metc. (Ky.) 6, it was held that one elected to the office of county attorney to which he was ineligible, not having been a licensed practicing attorney for two years, and exercising the functions and receiving the emoluments of the office, is guilty of usurpation of office and liable to indictment. It is insisted, however, that the right to an office cannot be determined by an action, other than a proceeding in the nature of a writ of *quo warranto*. Mr. Blackwell, in his treatise on tax titles, says, in writing of officers *de facto*, "the only appropriate mode of testing the title of a person to an office is, by an information in the nature of a writ of *quo warranto*, in which, after notice and impartial hearing, he will

be ousted from the office, if it turns out that he has been exercising official functions without the warrant of the law. Until then, he holds the office by sufferance of the State, and the silence of the government is construed by the courts as a ratification of his acts.   When the government acquiesces in the acts of such an officer, third persons ought not to be permitted to question them.'' Id. 117.   While I yield my assent to the doctrine here enunciated in the broadest extent, I am not unmindful of the existence of another principle equally well settled, namely, that when a party having been deprived of the use of an office comes into a court and applies for a writ of mandamus to restore him, the writ will never be awarded when it is clear and manifest that the party applying for the same was, at the date of his election, ineligible, and when it is patent that if restored he could be immediately ousted by a writ of *quo warranto.*

The papers in this case show that, at the date of Green's election, he was not a licensed attorney, and he was not entitled to practice in the courts of this territory, and, I think, I have already shown that the absence of this license rendered him incompetent to exercise the office of district attorney.   Can it be said that one who shows himself not entitled to an office has a right to this writ?   I know of no case that sanctions such a claim   It is, perhaps, the correct theory in reference to an office elective by the people, that the fact that an *eligible* person is duly chosen to fill the same, confers upon him the right, the title to such office, or the certificate of election or commission, is, in some respects, something like a deed to land, the mere evidence of such title.   This title gives the right to exercise the accustomed or fixed duties of the office, and receive the fees and emoluments therefor.   In this right, it has been often contended, there may exist a franchise to which the rights of property may attach for certain purposes.   But this title vests in and these rights inure only to an eligible person.   See *Glassock* v. *Lyons,* 20 Ind. 2 ; *Allen* v. *McKean,* 1 Sumn. 317.

In coming to the conclusion that I have reached, I have not been unmindful of the delicacy and importance of this

question, nor regardless of the rights of the people to exercise the electoral right, untrammeled by any conditions or restrictions, except such as are expressed by law.   But such conditions and restrictions, when established, are to be enforced as well as the right itself.   I am not at liberty to disobey the law as an individual, nor do I possess that right when acting with thousands of others.   Nor can I consent that a writ of mandamus shall issue to the judge below, when its force and effect is to compel him to do an act, the performance of which is a palpable violation of law.   For the reasons I have given the writ should be denied.

WELLS, J.   Although I at first doubted, I am now satisfied that the court has jurisdiction to entertain this application ; the court to which the writ is prayed is within the supervisory jurisdiction of this court; the duty sought to be enforced is of public concern, and is not judicial in its nature, nor one about which that court is called upon to exercise a discretion.

The election of Mr. Green, his qualification in office, and his entry upon the duties thereof, are admitted, and the sole ground of his exclusion was that he had not been admitted to the bar of this court, and that, by reason of ignorance of the law and the usage and practice of courts, he was incompetent to discharge the duties of his position.

But the statute has not prescribed any qualification of learning or admission as an attorney, to confer eligibility to this office, and I think courts ought to be slow to give to the general words of a statute such effect as to limit the right of the people to exercise their preference in filling the offices within their gift.   Undoubtedly it is more proper that the person elected to manage the causes of the people should be a member of the bar and in practice, for this affords an assurance in some degree of his competency to discharge the duties of that position.   Probably, too, it was generally supposed, when the act creating the office of district attorney was passed, that an attorney at law would

be chosen by the people, but I see nothing in this mere propriety, nor in the name by which the law designates the official, to warrant me in concluding that the legislature intended to restrict the suffrage of the people to a single class. The people have the power and the right, both by their inherent sovereignty and by prescriptive usage, to elect incompetent men to office; and if the legislature may lawfully limit the exercise of this right, and say that certain privileged classes shall exclusively exercise certain offices, they have not clearly said so as to this particular office, and I think we ought not to strain the text of the statute to limit the exercise of the elective franchise. It is a precedent full of danger. The authorities which are cited in support of the contrary view are not, in my opinion, entitled to controlling consideration.

*In May's case,* 3 Mich. 598, the opinion of the court is based upon the construction of a series of statutes which never were in force here.

*In Adam's case,* 3 Metc. 7, it appears that there was an express statute prohibiting any one not a licensed attorney from exercising this office. The opinion of my associate, therefore, rests solely upon the fitness and propriety that the legislature should have made this restriction and the mere circumstance or accident, that the legislature in denominating this office have used a word which indicates a person licensed by the courts to manage the causes of others for a reward.

But however this may be, it appears that in this case Mr. Green had not only been elected and commissioned, but he had entered upon his office and was in the actual exercise of its duties and functions. He was, therefore, an officer *de facto* by a colorable title, and he had a property in his possession of the office, however ineligible, of which he could lawfully be ousted only *by due process of law,* and due process of law is, in this case, nothing less than the judgment of a court of competent jurisdiction in a direct proceeding after notice to the incumbent and opportunity given him to be heard upon the question of his right.

It is not as if the prior incumbent had refused to yield the office and asserted the invalidity of Mr. Green's election ; in such case upon *quo warranto* brought, I apprehend the court might have investigated the question of the relator's eligibility.

But the prior incumbent yielded the office, and Green entered into it and had possession, and whether lawfully elected or not, he had a property in that mere possession of which he could no more be deprived by a summary order of court than of a freehold in lands. It is idle to say that he does not now show a lawful title to the office, his possession was his title, and that must suffice until lawfully dispossessed. If the courts may, for any supposed disqualification, exclude by a mere order the district attorney elected by the people, the same power certainly extends to the sheriff, and for any thing I can see, if Mr. Green may be excluded of his office, so may the attorney of the United States ; the official denomination of the two is identical ; the statutes of this territory, upon which the opinion of my associate is based, certainly govern both ; the one is as much an officer of the court as the other, and the former, quite as truly as the latter, holds his office from a power above and beyond the courts.

And if the authority which was claimed and exercised in the case of Mr. Green exists at all, it is difficult indeed to say that it does not extend to all public officers whatever ; unless those who exercise their functions beyond the precincts of the courts of law hold by some superior tenure, and this cannot be admitted.

I am of opinion that Mr. Green was unlawfully excluded from the office of district attorney, and that a peremptory mandamus ought to issue according to the prayer of the relator.

*Writ denied.*