[No. 4809.]

## DUNTON ET AL. v. THE PEOPLE EX REL. AIKEN ET AL.

**1. Quo Warranto—Right of Office—Burden of Proof—Harmless Error.**

In a quo warranto proceeding to determine respondents' rights to certain offices, respondents were not prejudiced by a ruling imposing the burden of proof upon relators to show that they were entitled to the office in question, before requiring respondents to show by what warrant they assumed to hold such office.—P. 130.

**2. Same—Title to Office—Estoppel.**

In a quo warranto proceeding to determine respondents' title to certain elective offices, no acts of relators, in the way of estoppel, could compel the court to determine that respondents were rightfully entitled to exercise the functions of aldermen, if under the law they were not elected.—P. 130.

**3. Statutory Construction—Repeals by Implication.**

Repeals by implication are not looked upon with favor. —P. 135.

**4. Same—Inconsistent Acts—Repealing Clause.**

Under the rules of construction, if a former act or part of an act is inconsistent with the provisions of a later one, the former must give way under the repealing clause; it is only such acts, or parts of acts, as are inconsistent with the latter that are repealed. If the provisions of two statutes can be so construed as to stand together, that construction must be given them, and the former is not repealed because they are not consistent, and the repealing clause only purports to repeal the inconsistent parts of the act; if they cannot be so construed as to stand together, they are inconsistent, and the former must fall because of the inconsistency, and its overthrow is not rendered more forcible or complete by reason of the repealing clause. The repealing clause does not make that consistent which is inconsistent, nor render that inconsistent which is consistent.—P. 135.

**5. Cities and Towns—Election of Aldermen—Statutes—Repeal.**

Mills' Ann. Stats., §4504, provided that the qualified electors of each ward in cities of the second class should annually, on the first Tuesday in April, elect an alderman for the term of two years, who should be a resident of the ward and a qualified elector. In 1901, Sess. Laws '01, pp. 384 and 385, the legislature passed an act providing that the qualified electors of all cities of the second class, on the first Tuesday in April of the year 1901 and every two years thereafter, should elect two aldermen

from each of the several wards of such cities, who should hold their respective offices for the term of two years and until their successors were duly elected and qualified. §3 thereof, provided, "that all acts and parts of acts inconsistent herewith are hereby repealed." Held, that the latter act did not repeal the portion of §4504 requiring aldermen to be elected by the voters of their respective wards.—P. 136.

*Error to the District Court of Clear Creek County. Hon. A. H. De France, Judge.*

*Quo warranto* by the people by John W. B. Smith, district attorney for the first judicial district, upon the complaint and relation of Albert M. Akin and Olaf Iverson. From a judgment in favor of relators, respondents bring error.    *Affirmed.*

Mr. E. M. Sabin and Mr. F. L. Callom, for plaintiffs in error.

Mr. Erwin L. Regennitter, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court:

This was an action in the nature of a *quo warranto,* in which relators contended that respondents were wrongfully usurping the offices of aldermen from the fifth ward of Idaho Springs, a city of the second class, and to which offices relators contended they were entitled.

In the court below relators were given the right to open and close, and this is assigned as error.

We have heretofore held in *quo warranto* proceedings that the burden is upon the respondent to prove his right to the office by a preponderance of the testimony.—*People v. Owers,* 29 Colo. 535; *People ex rel. v. Stratton,* 33 Colo. 464.

In neither of these cases was the action brought upon the relation of one who claimed that he was

entitled to an office and was being unlawfully deprived of it by the respondent.

In *People v. Owers,* it was contended that defendant had lost his right to the office by reason of his non-residence, and in the Stratton case it was contended that there was no office to be filled, because the town of Atwood was not legally incorporated.

However, respondents were not injured by the action of the court in imposing upon the relators the burden of showing that they were entitled to the offices before requiring respondents to show by what warrant they assumed to hold them, and it is not necessary for us to determine what the true rule is as to the burden of the proof in such cases.

Respondents contend that relators were estopped from contesting the right of respondents to hold the offices. It appears that relators were nominated by certain citizens of their ward and that they accepted the nomination, after which the city officials concluded that the proper practice was for the electors of the entire city to vote for the candidates for aldermen from each ward. Relators knew of this decision and took no steps to prevent the election from being so conducted, but suffered their names to be voted for by the electors throughout the city. After the election they protested to the city council, which was the canvassing board, against the vote of the entire city being canvassed in determining the result of the election of aldermen, and protested against the issuance of certificates of election to respondents.

This affords but slight ground upon which to base an estoppel. In any event, no acts of relators could compel us to determine that respondents were rightfully entitled to exercise the functions of aldermen if, under the law, they were not elected.—*People*

*v. Cornforth,* 34 Colo. 107; *People ex rel. v. Londoner,* 13 Colo. 303.

This brings us to a consideration of the real matter in controversy, viz: Are the aldermen in cities of the second class to be elected by the voters of the ward which they represent, or by the voters of the entire city?

The statute of 1897, Mills' Ann. Stats., 4504, which, so far as the election of aldermen was concerned, was the law until 1901, and, so far as it is material to this controversy, is as follows: ''The qualified electors of each ward in cities of the second class, shall, annually, on the first Tuesday in April, elect, by a plurality of votes, one alderman, who shall, at the time, be a resident of the ward, and a qualified elector therein; his term of service shall be two years.''

In 1901 the following was enacted: ''Sec. 1. The qualified electors of all cities of the second class shall, on the first Tuesday in April of the year 1901, and every two years thereafter, elect a mayor, city treasurer, city clerk, city attorney, city marshal (marshall), police magistrate, city engineer, city street supervisor, and two aldermen from each of the several wards of such cities, who shall hold their respective officers (offices) for the term of two years, and until their successors are duly elected and qualified. * * *

Section two provides: ''That all acts and parts of acts inconsistent herewith are hereby repealed.'' —Session Laws 1901, 384-385.

Was the provision of the old law, providing for the election of aldermen by the electors of the ward, absolutely repealed, or was the section simply modified so as to change the time of the holding of the election?

The question is not free from difficulty. The law of 1901 was not carefully worded.

To determine the intention of the legislature, it is necessary to consider the conditions which demanded the enactment of the law and its consequent purpose.—*State ex rel. v. Kelly* (Kans.), 81 Pac. 450; Sedgwick on Constr. of Statutory and Constitutional Law, page 202, *et seq.;* First Blackstone, 61; Potter's Dwarris on Statutes and Constitutions, p. 144, rule 7.

Acting well within the doctrine above stated, this court has said:

"The rule is that 'effect shall be given to the intention, whenever such intention can be indubitably ascertained by permitted legal means.' Another statement of the rule is 'so to construe statutes as to meet the mischief, to advance the remedy, and not to violate fundamental principles.' Dwar. St. 181, 184 and note. Vattel says: 'That must be the truest exposition of the law which best harmonizes with its design, its objects, and its general structure.' Among other well established rules of construction are these: ' That statutes are to be construed with reference to the objects to be accomplished by them, and with reference to the circumstances existing at the time of their passage, and the necessity for their enactment. Where a statute would operate unjustly or absurd consequences would result from a literal interpretation of the terms and words used, the intention of the framers, if it can fairly be gathered from the whole act, will prevail."—*Murray v. Hobson,* 10 Colo. 73.

The court of appeals has said: "It is always true that a thing apparently within the letter of an act is not within the statute, unless it be otherwise within the apparent and evident intention of the legislation. * * * The occasion and necessity of the law, and the mischief to be remedied and the object in view are always to be taken into account in

determining the intention.''—*Mouat Lumber Co. v. Gilpin,* 4 C. A. 537.

And again it is said: ''In the interpretation of a statute, it is a fundamental rule and an indispensible requisite to first inquire what object was sought to be accomplished by it. The intent of the statute is the law, and general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent.''—*Arapahoe County v. Hall,* 9 C. A. 541.

With this in mind, let us consider for a moment the condition of the law at the time of the passage of this act. Previous to 1901, an election was held in November of the odd numbered years for county officials; in November of the even numbered years, for state officials; in cities of the second class in April of each year elections were held for the purpose of electing city officials; and in May of each year, elections were held in school districts for district officials. The people were in constant travail over politics. They scarcely recovered from the after pains of one election, before they were in the throes of another. To meet this condition, the same session of the legislature which passed this act providing for the biennial city elections submitted to the people for their ratification constitutional amendments providing for the biennial election of state and county officers.

It is therefore apparent that the law of 1901 was enacted for a special purpose, and that purpose was to provide for biennial elections in cities of the second class.

It is an established rule that all acts *in pari materia* are to be taken together as if they were one law, and they are directed to be compared in the consideration of statutes, because they are considered as framed upon one system and having one object

in view.—Potter's Dwarris on Statutes and Constitutions, 189; Sedgwick on Statutory and Constitutional Law, 209.

Mr. Justice Belford in *People ex rel. v. Hallett,* 1 Colo. 358, said: "Another well established and fundamental rule of construction is, that all acts and provisions of the law, *in pari materia,* are to be taken and considered together. It follows, therefore, that, in construing the act under examination, we must look to the object and purpose of the legislature as gathered from the light of surrounding circumstances, and as illustrated and explained by previous legislation."

In *Commonwealth v. Griffin,* 105 Mass. 185, it appeared that the punishment prescribed by the old law for keeping a place deemed a common nuisance was by fine, not exceeding one thousand dollars, "or" imprisonment in jail not exceeding one year. The new law gave jurisdiction of such offenses to police courts and concurrently with the superior court, and provided that whenever a police court should exercise final jurisdiction therein, the punishment should be limited to a fine not exceeding one hundred dollars "and" imprisonment not exceeding one year in the jail or house of correction. And the court held, in speaking of the new law: "Taken by itself it would seem to authorize both fine and imprisonment, the language being conjunctive. But taken in connection with the prior statutes, it is a limiting and restrictive statute, and its intention appears to be to prescribe the limit of the fine as well as the imprisonment, and not to authorize an increased penalty by inflicting both."

So, the former statute was deemed as modified and not repealed, and that, too, at the expense of the plain reading of the later act.

Repeals by implication are not looked upon with favor.—*Rathvon et al. v. White,* 16 Colo. 41; *Denver v. Hart,* 10 C. A. 452.

It is doubtful whether the clause of the act of 1901 repealing all inconsistent acts or parts of such acts adds any force to the repealing properties of the other provisions of the law.—*District of Columbia v. Sisters of Visitation,* 15 App. Cases D. C. 308; The Hickory Tree Road, 43 Pa. St. 139.

Under the rules of construction, if a former act or part of an act is inconsistent with the provisions of a later one, the former must give way, under the repealing clause, it is only such acts or parts of acts as are inconsistent with the later that are repealed. If the provisions of the two statutes can be so construed as to stand together, that construction must be given them, and the former is not repealed because they are consistent, and the repealing clause only purports to repeal the inconsistent parts of the act; if they cannot be so construed as to stand together, they are inconsistent, and the former must fall because of the inconsistency, and its overthrow is not rendered more forcible or complete by reason of the repealing clause. The repealing clause does not make that consistent which is inconsistent, nor render that inconsistent which is consistent. It is contended:

"That the act of 1901 bears within itself in at least two places internal evidence that the legislature intended the absolute repeal of all portions of section 4504 which had not been repealed by previous enactment."

This cannot be true, because the later act does not determine the qualifications required of aldermen.

If the contention of plaintiffs in error is correct, one not a citizen or an elector or a resident of the

ward or of the city might be elected as alderman, or all of the aldermen of the city might reside in one ward. The entire section cannot have been repealed.

It is also contended that the words: ''The qualified electors of all cities of the second class shall * * * elect a mayor * * * and two aldermen from each of the several wards'' must be given a literal interpretation, notwithstanding the provisions of the former law, for the reason that the words are plain and unambiguous and that there is no room for construction.

Sec. 4504 of Mills' Annotated Statutes contains a similar provision, which is equally plain and unambiguous, namely: ''The qualified electors of each ward * * * shall annually * * * elect * * * one alderman * * * Such electors shall also elect * * * one city treasurer.''

Can it be said that because the act provided that the electors of each ward should elect a city treasurer, that that treasurer should not be elected by the electors of the entire city, or that there should be one city treasurer for each ward?

The language pertaining to the election of treasurer is equally plain and unambiguous as the language of the law of 1901 relating to the election of aldermen, yet there would be no difficulty in saying that this language, no matter how plain and unambiguous, should be construed as providing for the election of the city treasurer by the electors of the entire city.

It is further contended that: ''If the legislature, intending to change the system of electing aldermen in cities of the second class, had devoted itself to devising a formula for the purpose, it could not have found terms more precise, certain and clear than those actually employed.''

The answer to this is, that the same legislature, in providing for the election of county commissioners, did find words "more precise, certain and clear" than those used in the act now before us. It said: "One commissioner shall be elected from each of such districts by the voters of the whole county." It is fair to presume that if the legislature which made use of the above expression had desired to make such a radical change in the manner of electing aldermen, they would have said "and two aldermen from each ward, who shall be elected by the voters of the whole city" and thus put the matter beyond question and leave "no room for construction." The fact that it did not do so goes far in demonstrating that it did not intend to do so.

The general purpose of the act being to provide for the holding of biennial instead of annual elections, it should not be so construed as to give it a wider scope and deprive the people of the several wards of the right to choose their own aldermen, unless such construction is unavoidable, and such construction is not only unavoidable, but appears to be contrary to the legislative intent.

The judgment will therefore be affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.